---
Heald v. Cooper.
---

HEALD *vs.* COOPER & *al.*

Where mill-logs were sold for a price *per* thousand, according to the quantity of lumber they should afterwards be *estimated* to make; and there was a table or scale of estimation then in such general use that the parties were found by the jury to have referred to it as the rule for computing the quantity ; it was held that they were bound by this scale, though proved to be in some respects erroneous.

And, where the deduction actually made in such case, to render all the lumber equal to merchantable, was found to be too small; yet it having been made by mutual assent of both parties, with equal means of information, and without fraud, it was held conclusive upon both.

THIS was an action of *assumpsit* to recover the value of a quantity of logs sold by the plaintiff to the defendants. It appeared that in *October*, 1825, the parties entered into a written contract, by which the plaintiff sold to the defendants all the pine and spruce mill-logs which he might cut and deposit on the *Kennebec* river, at or a little below the forks ; and the defendants agreed to pay " three dollars for each and every thousand feet of merchantable boards that the above named logs may be estimated to make." On the 18th day of

*March,* 1826, the defendants indorsed on the contract an acknowledgement that they had received logs sufficient to make 180,740 feet of boards ; and 10,000 feet more on the 23d of *March.* These receipts were dated at *Carratunk.* The plaintiff resided in *Madison,* and the defendants in *Pittston.* In *July* following, the logs were settled for, and a receipt in full given for the price.

But the plaintiff founded his claim on an alleged error in the mode of estimating the quantity of lumber the logs would make, and by which the computation was made at the time of settlement. It appeared that there were two tables or scales in use at that time ; the one denominated " the *Learned* scale," which was in manuscript; the other " the *Brunswick* scale," which was printed. Both of these scales, when applied to logs of small size, such as some of them were proved to have been, would indicate a greater quantity of lumber than the logs would actually produce; but the latter scale was most correct when applied to logs producing 500 feet and upwards. The former scale was first used at *Clinton ;* then at *Waterville,* and at *Gardiner ;* and it gave results more favorable to the purchaser than the *Brunswick* scale ; which being printed, accompanied with rules, and more convenient, had come into general use, superseding the other. The defendants estimated the logs by the *Learned* scale, the plaintiff complaining of it at the time, and doubting its correctness, and being assured by the defendants that it was correct. Upon this point *Weston J.* before whom the cause was tried, instructed the jury, that if at the time of making the contract, and subsequently, the *Brunswick* scale had been exclusively used and adopted at and above *Gardiner,* on the *Kennebec* river, in the sale and purchase of logs, the contract must be deemed to have been made in reference to that scale ; and that if a different scale, less favorable to the plaintiff, and without his knowledge and assent, were applied by the defendants, the plaintiff was entitled to recover the difference between the scale which was and that which should have been applied.

It appeared that at the time of the settlement a deduction of six *per cent.* was made by mutual agreement, in order to make the amount equal to merchantable lumber. The defendants offered

5

evidence to prove that a greater allowance should have been made for this purpose ; and that the amount of the error thus made against them was greater than the excess in their favor which resulted from the use of the *Learned* scale. And they insisted that if the settlement was revised for the correction of one error, there ought to be a correction of both. But it being in evidence that the logs were open to the view of both parties, and that the allowance of six *per cent.* was proposed by the defendants and acceded to by the plaintiff, the Judge instructed the jury that the defendants were bound by the agreement.

And the verdict, which was for the plaintiff, was taken subject to the opinion of the Court upon the correctness of those instructions.

*Allen,* for the defendants, argued that as the quantity of lumber in the logs was to be " estimated" by the parties, and they had exercised their joint judgment on the subject, with such aids as they chose to adopt, the estimation, being without fraud, was final and conclusive. And as either of the scales or tables in common use would give the plaintiff more than the actual amount sold, and he had received his full pay according to one of them, he was not entitled to recover ; but if there has been an error one way in the estimate, there has been a mistake of equal magnitude the other way, in the amount deducted ; one of which ought to be considered against the other.

*Boutelle,* for the plaintiff.

PARRIS J. delivered the opinion of the Court.

Every legal contract is to be carried into effect according to the intention of the parties thereto. In this case, the contract, on the part of the plaintiff, was to furnish a quantity of mill-logs, cut and hauled on the banks of *Kennebec* river near the forks ;—on the part of the defendants, it was to pay three dollars for each and every thousand feet of merchantable boards, which said logs may be estimated to make. No mode is prescribed, in the written contract, by which this estimate is to be made ; and it is understood that, from the nature of the article to be delivered, the exact contents could not be ascertained until after the logs had been taken down

the river and converted into boards.——But it is alleged, on the part of the plaintiff, that this contract was entered into in reference to a usage or custom prevailing among log dealers on the *Kennebec* river, to ascertain the quantity of boards which may be made from a log or lot of logs by a scale called the *Brunswick* scale;—and it was submitted to the jury to determine, whether, at the time of making the contract, that scale was in such general and exclusive use, as that the parties in making their contract, must be presumed to have had reference to it, and would expect to ascertain the number of feet of boards, which the logs would make by that scale, and they have found in the affirmative.

This usage explains the intent of the parties, and not being in opposition to established principles of law, or in contradiction to the express terms of the written instrument, is deemed to form a part of the contract, as much as though actually incorporated into it, or expressly referred to. *Williams v. Gilman,* 3 *Greenl.* 267; 2 *Stark. Ev.* 453. Every instrument is presumed in its general terms to refer to the known and established usage respecting the subject to which it relates, and should be construed accordingly. 2 *Ev. Poth.* 214. We are then to construe this contract as if it read "The said *Coopers,* on their part, agree to pay the said *Heald* three dollars for each and every thousand feet of merchantable boards that the above named logs may be estimated to make, such estimate to be made by the *Brunswick* scale." Considering that the jury have found the usage, and that the parties contracted in reference to such usage, they are bound by it, and the plaintiff is entitled to three dollars per thousand according to that scale, unless the defendants entered into the contract under such circumstances as will absolve them from the whole or any part of it. They contend that the estimate by the *Brunswick* scale is erroneous;—that its application to logs of the size of those delivered under this contract gives a larger quantity of boards than can be actually produced; and that the plaintiff is, therefore, not entitled to the benefit of that part of the contract growing out of the usage, but must be holden to the strict quantity, or at farthest, to the estimate made by the *Learned* scale, which is understood to be more exact in giving the quantity

of boards to be produced from logs of the size of these, than the. *Brunswick* scale. In viewing this objection we must consider the situation of the parties at the time they made the contract, and the circumstances under which it was made. It was made between individuals residing on the *Kennebec* river, and engaged in the lumber business.—It specified the situation from which the logs were to be taken, and where to be deposited, with such exactness as to leave no room for doubt but the defendants knew, or with reasonable diligence might have known, the description and general size of the logs for which they contracted. The *Brunswick* scale had been in use for many years, was printed and extensively circulated, and, being more convenient, had come into very general use; and before and since the contract had entirely superseded the *Learned* scale.

The presumption is, from these facts, that the defendants knew the general size and quality of the logs they purchased, and also the character of the scale by which they were to be estimated; and if they did not, that it was in consequence of a want of such diligence as the law presumes every man, having a due regard to his own interest, would be likely to use.

It is said that the *Brunswick* scale is erroneous in favor of the vender, when applied to logs of a diameter insufficient to make five hundred feet, but that when applied to logs of a larger size, it is erroneous in favor of the purchaser.

It is evident that a scale founded on general principles cannot, in its application, be equally exact in all cases. If a given *per cent.* is to be deducted, as waste, from the contents of the log, it is apparent that if the deduction be correct in a large log, it cannot be so in a small one. But it is not found, and certainly it is not to be presumed, that the defendants, dealers in lumber as they are, could be ignorant of a fact so apparent and important to the interests of all persons engaged in the lumber business. If they knew the character of the *Brunswick* scale, and they are to be presumed to have known it; if they knew, or with reasonable diligence might have known, the size and description of the logs they purchased, and of this there can be no doubt; and if they agreed that the amount of these logs should be estimated by the *Brunswick* scale, which the

jury have found to be the fact, how can they escape from the fulfilment of their contract? If the defendants' engagement had been to pay three dollars for every thousand feet of merchantable boards that the logs would actually make, as the exact quantity could not be ascertained by either scale, but only by actual admeasurement after the logs had been sawed, perhaps the evidence of custom establishing the *Brunswick* scale would have been irrelevant, as the extent of the defendants' liability would depend upon the actual, not the estimated quantity. Such, however, is not the contract. The jury have settled the fact that the quantity was to be estimated by the application of the *Brunswick* scale. Whether that scale gave more or less, the parties are to be bound by their agreement.

But the defendants contend that the allowance made by the plaintiff to render the contents of the logs equal to merchantable was insufficient. It appears that sixty feet on a thousand was allowed for this purpose, and the defendants contend that the additional allowance, which they claim as necessary to make the lumber equal to merchantable, would be more than the difference between the *Brunswick* and *Learned* scales, and that this constitutes a defence to the action. How stands the case relative to the allowance? At the time that was made, the logs were open for examination, and were examined by both parties; and upon such examination, the defendants themselves proposed six *per cent.* as the proper allowance, which was acceded to by the plaintiff; and accordingly the allowance was made and accepted.

There is no pretence of any concealment of facts, or that the plaintiff had any greater or better means of ascertaining the quality of the logs than the defendant had. The parties stood on equal ground, and having settled that question themselves, it is not open for re-examination; certainly not in the absence of all suggestion of fraud or mistake. If there was any error in the estimate, it arose from defect of judgment, and as well might a party to any contract of exchange or purchase of property allege such a cause for annuling his contract as could the defendants in this case. But the mistake in estimating the quantity of lumber which the logs would make arose in a very different manner.

The case finds that the defendants used the *Learned* scale in. making this estimate, when they should have used the *Brunswick* scale;—that the plaintiff complained of it, at the time, and repeatedly inquired of the defendants whether it was correct, to which they replied in the affirmative, and further stated that it was disputed up the river until it was compared with the *Brunswick* scale. The error arising from the application of the *Learned,* instead of the *Brunswick* scale, in estimating the quantity of boards the logs would make, is, therefore, attributable wholly to the misrepresentation of the defendants, and if, in consequence thereof, the settlement made and receipt given were upon the payment of a sum less than was actually due upon an estimate according to the *Brunswick* scale, the defendants are bound in equity and in law to make up the deficiency, and this action will well lie to recover it.

We are of opinion that the ruling and instructions of the Judge were correct, and that there must be     *Judgment on the verdict.*